# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# NORTHERN DIVISION

**MARY L. M. BOLAND**                                                                 **PLAINTIFF**

**v.**                                                            **CAUSE NO. 3:17cv803-LG-RHW**

**MISSISSIPPI DEPARTMENT OF**
**PUBLIC SAFETY**                                                        **DEFENDANT**

## MEMORANDUM OPINION AND ORDER DENYING MOTION FOR SUMMARY JUDGMENT

BEFORE THE COURT is the [28] Motion for Summary Judgment filed by Defendant Mississippi Department of Public Safety ("DPS"). Plaintiff Mary L. M. Boland, who goes by "Nicki," claims she suffered discrimination based on her race and sex, in violation of Title VII, and she suffered pay discrimination, in violation of the Equal Pay Act. The present Motion argues that Plaintiff has failed to establish a prima facie claim of race discrimination or pay discrimination, and that Plaintiff has otherwise failed to meet her burden of production so as to avoid summary judgment on any of her claims. The parties have fully briefed the Motion. Having considered the submissions of the parties, the record, and relevant law, the Court finds that material questions of fact remain as to all of Plaintiff's claims. Summary judgment is thus inappropriate, and Defendant's [28] Motion for Summary Judgment will be denied.

## I. BACKGROUND

Plaintiff Nicki Boland filed her Complaint on October 6, 2017, naming DPS the sole defendant. She subsequently amended her allegations through a First

Amended Complaint. Boland, who is Caucasian and female, was hired by DPS as an attorney in DPS's general counsel office in October of 2015. Her title was "Attorney, Senior" and she began with a salary of $75,000. In this role, Boland worked three days per week at Public Service Planning ("PSP") and two days per week at the Criminal Information Center ("CIC"). She reported to Captain Donald McCain, the director of PSP, and Captain Lamond Wilson, the director of CIC. After Captain McCain retired in April or May of 2016, Boland reported directly to DPS Commissioner Albert Santa Cruz until Ray Sims became director of PSP[1] – and therefore Boland's direct supervisor – around August 2016.

Boland says that Sims demonstrated that he wanted only black persons working at PSP. Boland testified that Sims talked abusively to the white women working under him and, within months of becoming the interim director of PSP, the top two persons in the department – both of whom were white females – were terminated. Five white females working under Sims were terminated in the first seven months of Sims's tenure as PSP director. Additionally, Boland says she was paid considerably less than male attorneys working in the same capacity at DPS. Boland was terminated on April 21, 2017 and, she says, replaced by a white male, Jay Eads.[2] Marshall Fisher – who had replaced Santa Cruz as commissioner of DPS on February 1, 2017 following Santa Cruz's retirement – was the final decisionmaker and made the decision to fire Boland. However, Boland asserts that

---

[1] Sims initially assumed the director role on an interim basis. The interim tag was removed on May 1, 2017.
[2] Eads was already employed by DPS as an "Attorney, Senior," but he assumed Boland's duties after she was terminated.

Sims's animus towards white women is attributable to the termination decision because Fisher relied on Sims's recommendation and conducted no independent review of his own.

On November 15, 2018, DPS filed the instant Motion for Summary Judgment. DPS argues that it is entitled to summary judgment on all of Boland's claims because (1) she cannot establish a prima facie claim of race discrimination; (2) she cannot overcome the numerous legitimate, nondiscriminatory reasons proffered for her termination to create a fact issue as to her claim of sex discrimination; and (3) she cannot establish a prima facie disparate pay claim because she has not identified nearly identical male comparators. Boland challenges the manner in which DPS has framed the issues and contends that summary judgment is inappropriate because material issues of fact remain as to all claims.

## II. DISCUSSION

a. <u>Summary Judgment Standard</u>

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate

specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

    b. <u>Discrimination Under Title VII</u>

Title VII provides that it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race [or] sex . . . ." 42 U.S.C. § 2000e-2(a)(1). Plaintiff does not purport to have direct evidence of discrimination, thus the framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973), and its progeny applies, "and the plaintiff must prove discrimination by circumstantial evidence." *Herster v. Bd. Of Supervisors of La. State Univ.*, 887 F.3d 177, 184 (5th Cir. 2018). To make out a prima facie case of discrimination under this framework, Boland must demonstrate

that (1) she is a member of a protected group, (2) she was qualified for the position at issue, (3) she was subject to an adverse employment action, and (4) she was replaced by someone outside her protected group or was treated less favorably than similarly situated employees outside of her protected group under nearly identical circumstances. *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259 (5th Cir. 2009); *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).[3]

If the plaintiff meets her burden of making a prima facie case, the defendant must then rebut this showing by producing a legitimate, nondiscriminatory reason for its actions. If the defendant meets its burden, the presumption of discrimination disappears, and the issue becomes discrimination *vel non*. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000). The plaintiff can still establish disparate treatment by showing that the defendant's explanation for the employment action is a pretext for discrimination. *Id.* at 143. In other words, the plaintiff can meet her burden by showing that "the employer's proffered explanation is unworthy of credence." *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Still, the "ultimate burden of persuading the trier of fact that the defendant

---

[3] Boland makes reference in a footnote to the alternative method of establishing a prima facie discrimination claim in work-rule violation cases. *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1090 (5th Cir. 1995) ("In work-rule violation cases, a Title VII plaintiff may establish a prima facie case by showing 'either that [s]he did not violate the rule or that, if [s]he did, white employees who engaged in similar acts were not punished similarly.'" (quoting *Green v. Armstrong Rubber Co.*, 612 F.2d 967, 968 (5th Cir. 1980)). But Boland does not seem to otherwise pursue this analysis, and it also proves superfluous given that the Court finds she has met her prima facie burden under the traditional test.

intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

Because employment discrimination claims "involve nebulous questions of motivation and intent," summary judgment is generally an inappropriate tool for resolving these cases. *Thornbrough v. Columbus & Greenville R.R. Co.*, 760 F.2d 633, 640-41 (5th Cir. 1985) (citations omitted). However, if the plaintiff fails to establish a prima facie case, or if defendant presents strong evidence of a legitimate, nondiscriminatory reason for its actions, and the plaintiff is unable to counter with additional evidence of pretext, summary judgment may be properly granted. *Bauer v. Albermarle Corp.*, 169 F.3d 962, 966 (5th Cir. 1999); *Enplanar, Inc. v. Marsh*, 11 F.3d 1284, 1295 (5th Cir. 1994).

i. <u>Plaintiff's Prima Facie Case</u>

Boland has satisfied the elements of a prima facie claim. DPS interprets her claim as being premised upon either racial discrimination (she is white) or sex discrimination (she is female). While conceding that Boland can make out a prima facie case of sex discrimination,[4] DPS argues that she cannot state a prima facie claim of race discrimination because she was replaced by a white male. Boland agrees, but also correctly notes that the combination of the two protected groups forms a third protected group – white female. *See Jefferies v. Harris Cty. Cmty. Action Ass'n*, 615 F.2d 1025, 1032 (5th Cir. 1980) ("Discrimination against black

---

[4] DPS agrees that Boland was qualified for the job and that she experienced an adverse employment decision. She has been licensed as an attorney for 37 years, worked at DPS for eighteen months within receiving any disciplinary action, and was terminated.

– 6 –

females can exist even in the absence of discrimination against black men or white women. . . . If both black men and white women are considered to be within the same protected class as black females[,] no remedy will exist for discrimination which is directed only toward black females."). Boland has thus stated prima facie claims for sex discrimination and race plus sex discrimination.[5]

    ii.    <u>Defendant's Legitimate, Nondiscriminatory Reasons</u>

DPS asserts that Boland was terminated for unprofessional conduct. DPS says that "several issues with Boland's work performance and conduct arose within the first three months after Marshall Fisher was appointed as Commissioner of DPS" on February 1, 2017. (Mem. Supp. Mot. Summ. J. 10, ECF No. 29.) There was "an incident at a legislative committee meeting where Boland engaged in a heated discussion with a sitting Judge, Bill Skinner." (*Id.*) Another time, Boland gave a presentation at the Mississippi Judicial College, after which Justice Pierce apparently contacted other counsel at DPS to request that Boland not return as a presenter. "There were issues with Boland's handling of contracts," which made up a significant portion of her job duties; she "routinely required assistance with basic contract issues and on several occasions requested to attend basic contract courses." (*Id.*) And "[t]here was a general lack of confidence in her legal abilities." (*Id.*)

"In early April, Fisher learned from former DPS Commissioner Rusty Fortenberry that Boland had been very confrontational with him during a meeting that Fortenberry attended at DPS with his law partner." (*Id.*) Fortenberry

---

[5] As will be addressed *infra*, to the extent that Boland attempts to make a Title VII claim premised upon disparate pay as the adverse employment action, such a claim has not been exhausted before the EEOC and cannot be considered by the Court.

described Boland's conduct as "unprofessional, loud, and uncalled for." (*Id.* at 10-11.) In April 2017, Fisher learned of a meeting between Ray Sims and Sam Sinclair from the National Highway Traffic Safety Administration ("NHTSA"), during which "Boland entered and became confrontational with Sinclair." (*Id.* at 11.) Sims reported to Fisher that he asked Boland "to leave the room, which she did, but that she returned a short time later and engaged Mr. Sinclair in an inappropriate manner." (*Id.*) This occurred on April 19, 2017, during a time when DPS had an ongoing dispute with NHTSA regarding federal grant money, and "it was important to [Fisher] that [the agencies] get along both personally and professionally." (*Id.* (alterations in original).) With this proffered explanation, DPS has satisfied its burden of articulating legitimate, nondiscriminatory reasons for Boland's termination.

iii. <u>Boland's Evidence of Pretext</u>

The evidence Boland offers can be characterized as falling into one of two separate categories: (1) evidence that challenges the veracity of DPS's nondiscriminatory reasons for her termination, and (2) further circumstantial evidence of discriminatory intent.

With regard to the incident with Judge Bill Skinner, Boland testified in her deposition that Judge Skinner "erroneously inserted himself" into her presentation before a state legislative committee and that she "merely stated that he did not know what he was talking about; this had nothing to do with youth court." (Resp. Opp. Mot. Summ. J. Ex. 1, at 22, ECF No. 31-1 (ECF pagination).) DPS

– 8 –

investigated the matter and similarly found that Judge Skinner interrupted her presentation and was not recognized to speak; Boland had the floor for her presentation and said to Judge Skinner, "you stay out of it, this has nothing to do with you." (*Id.* Ex. 28, at 1, ECF No. 31-28.) Boland contends that nothing in the investigative report supports DPS's characterization of this incident. Commissioner Fisher also testified at this deposition that he did not recall this incident being one of the reasons for her termination.

As for the presentation before the Judicial College, Boland says she spoke with Justice Pierce since her termination about the presentation and he told her that he did not have a problem with her presentation, "but apparently there was a concerted effort being made to discredit [her] ability to present this information." (*Id.* Ex. 1, at 22, ECF No. 31-1 (ECF pagination).) She says Justice Pierce told her that Trae Sims – another attorney in the general counsel's office at DPS – called Pierce and told Pierce that he did not want Boland presenting anymore.

DPS says that Boland had issues with handling contracts, which was a significant portion of her job responsibilities. However, Jay Eads – another attorney in the general counsel's office at DPS – testified that he often worked with Boland and found her to be competent and professional. He also testified that contracts in general at DPS were a mess and that both he and Boland were attempting to improve poorly drafted, complicated contracts that they had inherited from previous attorneys at DPS. Commissioner Fisher also testified that Boland was never written up or disciplined for her job performance, including her handling

of contracts.  Fisher also did not have any personal knowledge of any of Boland's work product that he would have considered poor and did not recall who would have reported Boland's supposedly poor legal work.

As to Boland's alleged confrontational interaction with Rusty Fortenberry, Boland, herself disputes that she engaged in anything other than regular conversation during that meeting.  Rather, she says that Fortenberry, a former DPS commissioner, was brought to the meeting by whoever DPS was doing business with to "play hardball," and she simply participated in the meeting.  (*Id.* at 24 (ECF pagination).)

Finally, concerning the NHTSA meeting, Boland testified that Ray Sims allowed her to ask a couple of questions of Sam Sinclair,[6] the NHTSA representative.  Boland says she asked Sinclair what NHTSA wanted in an advertising contract and why had he alleged that Mississippi had done something illegal with respect to an NHTSA grant.  She says these were both within the purview of her work.  She says that Sinclair lost his cool and screamed at Boland, but that she did not raise her voice or act in an unprofessional manner.  It is undisputed that Fisher learned of this interaction from only Ray Sims, and Fisher did not speak to either Sinclair or Boland – the only other people in the room – about what had transpired.

The additional circumstantial evidence of discrimination includes the fact that five white women – Penny Corn, Twyla Jennings, Virginia Stubbs, Mary

---

[6] Boland, in her deposition, remembers a different NHTSA representative present at the meeting – not Sinclair – but her briefing seems to accept that Sinclair was the one present, or otherwise does not make issue of that discrepancy.

Lukens, and, of course, Boland – working at PSP under Ray Sims were terminated within the first seven months of his tenure. Each of them has testified that they independently observed Ray Sims treating white women at PSP worse than black employees and male employees. DPS notes that three other people were also terminated in those seven months – two black women and one white man. While this certainly cuts against the probative value of these four other women's termination, it does not render them entirely inconsequential. Boland also notes that her termination letter provided no reason for her termination, she was given no reason during the meeting in which she was given the letter, and Fisher had no personal knowledge of any of the supposed reasons for her termination. Furthermore, she had never been disciplined or otherwise informed that her work was not up to par.

Boland maintains that she has presented sufficient evidence to demonstrate that the reasons proffered by DPS are pretext for discriminatory intent or that, at the very least, discriminatory intent was one of several reasons for her termination. The Court agrees. Boland's assertion of pretext "rel[ies] upon sufficiently specific, substantive reasons beyond self-serving, subjective, or speculative allegations." *Murphree v. Potter*, 226 F. Supp. 2d 826, 835 (N.D. Miss. 2002) (citing *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir. 1996)). Defendant's arguments in favor of summary judgment ultimately ask this Court to weigh the conflicting evidence as the jury must do. Plaintiff has offered sufficient evidence from which a reasonable jury could conclude that DPS's proffered reasons for Boland's

termination are not worthy of credence and unlawful animus against white women the but for cause of her termination.[7] Summary judgment is therefore not appropriate on Boland's Title VII discrimination claim.

    c. <u>Disparate Pay Under the Equal Pay Act</u>

Although Boland does not reference the Equal Pay Act in her Complaint, she contends that she may nonetheless maintain such a claim because she has pleaded facts supporting such a claim. DPS responds that a plaintiff may not defeat summary judgment by raising a theory found nowhere in their complaint. While this might be true if summary judgment were to be granted on Boland's other claims, such that her only basis for surviving summary judgment were a previously un-alleged theory of liability, this is not the case here. She does not employ the Equal Pay Act claim to "defeat summary judgment." *See Johnson v. Thibodaux City*, 887 F.3d 726, 736 (5th Cir. 2018). The facts underlying the claim were alleged at the inception of the lawsuit and, therefore, should not catch the defendant by surprise. The Court will proceed to the merits of Boland's disparate pay claim.

As an initial matter, DPS suggests that Boland is alleging a disparate pay claim under Title VII. Boland does not explicitly disclaim that this might serve as the basis for her claim, but also does not brief the issue at all. Regardless, this Court has no jurisdiction to hear a Title VII claim premised upon disparate pay as the adverse employment action because Boland never exhausted such a claim through her EEOC discrimination charge. *Nat'l Ass'n of Gov't Emps. v. City Pub.*

---

[7] Plaintiff also alleges a mixed-motive claim in the alternative, but the Court need not address this analysis at this stage because Plaintiff has met her burden to survive summary judgment on her standard but-for causation claim.

– 12 –

*Serv. Bd.*, 40 F.3d 698, 711 (5th Cir. 1994). A Title VII suit "may extend as far as, but not further than, the scope of the EEOC investigation which could reasonably grow out of the administrative charge." *Fine v. GAP Chem. Corp.*, 995 F.2d 576, 578 (5th Cir. 1993). To the extent that Boland asserts a disparate pay claim under Title VII, that claim is dismissed for lack of jurisdiction.

The Equal Pay Act ("EPA") proscribes discrimination "between employees on the basis of sex by paying wages to employees in such establishment at a rate less than the rate at which [the employer] pays wages to employees of the opposite sex in such establishment for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions." 29 U.S.C. § 206(d)(1). "[I]n order to establish a claim under the Equal Pay Act, the plaintiff must show (1) that her employer is subject to the Act; (2) that she performed work in a position requiring equal skill, effort and responsibility under similar working conditions; and (3) that she was paid less than members of the opposite sex." *Jones v. Flagship Int'l*, 793 F.2d 714, 722-23 (5th Cir. 1986); *see also Espinoza v. San Benito Consol. Indep. Sch. Dist.*, 2018 WL 5018491, at *2 (5th Cir. Oct. 12, 2018) (unpublished). "To establish 'equal work,' the plaintiff need only prove that the 'skill, effort and responsibility' required in the performance of the jobs is 'substantially equal.'" *Jones*, 793 F.2d at 723 (quoting *Pearce v. Witchita Cty., City of Witchita Falls, Texas Hosp. Bd.*, 590 F.2d 128, 133 (5th Cir. 1979)).

DPS does not contend that it is not subject to the EPA.  Boland has submitted competent evidence to establish that, for most of her tenure at DPS, she was one of four attorneys working as general counsel for DPS.  The other three were Jim Younger,  Jay Eads, and Trae Sims.  She testified – and Jay Eads largely corroborated – that she held the same job title and performed substantially the same work as Eads and Trae Sims.  Eads was hired by DPS at $92,000 per year.  Trae Sims was hired at $106,000 per year.  Boland was hired at $75,000 per year and, after complaining that she was being paid less than Eads and Trae Sims, was given a raise to $82,500 per year.  Before being hired by DPS, she had worked for thirty-seven years since receiving her law license, at least eight of which were spent doing legal work.  Sufficient evidence supports Boland's prima facie case.

Once the plaintiff shows that she is paid less than an employee of the opposite sex for substantially equal work, the burden of proof shifts to the employer to show that the differential is justified under one of the Act's four exceptions.  *Plemer v. Parsons–Gilbane,* 713 F.2d 1127, 1136 (5th Cir. 1983).  The Act provides exceptions for disparate wage payments "made pursuant to (i) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality; or (iv) a differential based on any other factor other than sex."  29 U.S.C. § 206(d)(1).  These exceptions "are affirmative defenses on which the employer has the burden both of production and of persuasion."  *Plemer,* 713 F.2d at 1136.

DPS does not contend that it has any system for determining employee pay, but it maintains that Boland was not paid less because of her sex.  DPS offers

– 14 –

plenty of evidence in support of its affirmative defense, including the fact that other women hired after Boland were paid more than her and more than Eads, and the fact that the male attorney who Boland was hired to replace was paid much less than her. But the Court may not weigh this conflicting evidence. Boland has stated a claim under the EPA, and DPS may pursue its affirmative defense at trial.

### III. CONCLUSION

Having determined that Defendant DPS is not entitled to summary judgment on any of Plaintiff Boland's claims, the Court concludes that DPS's Motion for Summary Judgment must be denied.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [28] Motion for Summary Judgment filed by Defendant Mississippi Department of Public Safety is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 12th day of March, 2019.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE